UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIM. NO.  3:20-CR-71 (VAB) |
| AHMAD ELSHAZLY | : | February 22, 2022 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

INTRODUCTION ........................................................................................................ 2

BACKGROUND ......................................................................................................... 3

ARGUMENT .............................................................................................................. 4

I.    THE SUPERSEDING INDICTMENT'S FAILURE TO STATE A CRIME AGAINST
THE UNITED STATES VIOLATES THE FIFTH AMENDMENT ........................................ 4

A.    The Indictment Fails to Allege Coordination with ISIS .............................................. 5

B.    Coordination with ISIS Is an Essential Element of a § 2339B Offense ....................... 8

C.    The Defect in the Indictment Is Fatal to Both Count One and Count Two ............... 19

II.    IN THE ALTERNATIVE, COUNT TWO OF THE SUPERSEDING INDICTMENT
SHOULD BE DISMISSED BECAUSE IT VIOLATES THE FIRST AMENDMENT ......... 21

III.    IN THE ALTERNATIVE, AS APPLIED TO THE CONDUCT ALLEGED IN COUNT
TWO OF THE SUPERSEDING INDICTMENT, § 2339B IS UNCONSTITUTIONALLY
VAGUE ................................................................................................................... 22

CONCLUSION.......................................................................................................... 23

**INTRODUCTION**

The second superseding indictment in this case charges Mr. Ahmad Elshazly with two counts of attempting to provide material support to the Islamic State of Iraq and al-Sham (ISIS) in violation of 18 U.S.C. § 2339B(a)(1). Both counts of the superseding indictment should be dismissed pursuant to the First and Fifth Amendments of the United States Constitution and Fed. R. Crim. P. 12(b)(3)(A)(v) and 12(b)(3)(B)(v).

The two counts should be dismissed because they fail to state an offense against the United States and fail to ensure Mr. Elshazly faces trial only on charges that have been properly presented to the grand jury, as required by the Fifth Amendment. Specifically, as explained below, the government has failed to allege Mr. Elshazly attempted to coordinate with ISIS or to place himself directly under ISIS's control. Section 2339B, however, specifically forbids prosecution of individuals acting independently of a terrorist organization. Mr. Elshazly should not face trial where the government has not – and likely cannot – demonstrate to a grand jury that his conduct is actually criminal conduct, rather than activity constitutionally protected by the First Amendment.

In the alternative, insofar as the superseding indictment alleges conduct within § 2339B's scope, Count 2 of the superseding indictment still should be dismissed for two additional reasons. As applied to this charged conduct, § 2339B (i) improperly criminalizes speech in violation of the First Amendment; and (ii) is so vague it violates the Fifth Amendment.

## BACKGROUND

On December 16, 2019, federal authorities arrested Mr. Ahmad Elshazly pursuant to a complaint alleging that he committed one count of "Attempting to Provide Material Support and Resources to a Foreign Terrorist Organization" in violation of 18 U.S.C. § 2339B. (ECF No. 1.) Mr. Elshazly appeared in court on that date and was ordered detained. (ECF No. 2.) He has remained detained for the past 26 months.

On May 20, 2020, a grand jury returned an indictment likewise alleging Mr. Elshazly attempted to violate § 2339B, specifically by providing himself as "personnel." (ECF No. 48.)

On March 15, 2021, a grand jury returned the operative superseding indictment (ECF No. 83, attached as **Exhibit 1**) which charges two § 2339B attempt counts. Count One alleges that:

> On or about September 4, 2018, through on or about December 15, 2019, in the District of Connecticut and elsewhere, the defendant AHMAD KHALIL ELSHAZL Y knowingly attempted to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b)(l) , that is , personnel, namely himself, to the Islamic State of Iraq and al-Sham ("ISIS") , which at all relevant times was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that ISIS was a designated foreign terrorist organization, and knowing that ISIS had engaged in, and was engaging in, terrorist activity and terrorism , and the defendant AHMAD KHALIL ELSHAZL Y was a United States citizen and the offense occurred in whole and in part within the United States.

Count Two alleges that:

> On or about September 4, 2018 , through on or about December 15, 2019, in the District of Connecticut and elsewhere, the defendant AHMAD KHALIL ELSHAZL Y knowingl attempted to provide material suppo1i and resources, as that term is defined in Title 18, United States Code, Section 2339A(b)(l), that is, services, by administering chat rooms and servers to distribute propaganda and recruitment materials, to the Islamic State ofIraq and al-Sham ("ISIS"), which at all relevant times was designated by the Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act, knowing that ISIS was a designated foreign terrorist organization, and knowing that ISIS had engaged in, and was engaging in, terrorist activity and terrorism, and the defendant AHMAD KHALIL ELSHAZLY was a United States citizen and the offense occurred in whole and in part within the United States.

**ARGUMENT**

## I. THE SUPERSEDING INDICTMENT'S FAILURE TO STATE A CRIME AGAINST THE UNITED STATES VIOLATES THE FIFTH AMENDMENT

Mr. Elshazly has a Fifth Amendment right to be tried only upon charges properly presented to a grand jury. The superseding indictment in this case, however, fails to allege that Mr. Elshazly acted (or attempted to act) in coordination with a terrorist organization. Absent an allegation that Mr. Elshazly actually coordinated with ISIS, the present charges against him violates his First Amendment right to free speech.

The Fifth Amendment to the Constitution of the United States of America states that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury[.]" U.S. Const., amend. V. The grand jury is a critical judicial safeguard. It

> is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity. No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than sixteen nor more than twenty-three good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial.

*In re Charge to Grand Jury*, 30 F. Cas. 992, 993 (C.C.D. Cal. 1872) (quoted in *United States v. Dionisio*, 410 U.S. 1, 18, 93 (1973)).[1] "The very purpose of the requirement that a man be indicted

---

[1] Offering further explanation, the Supreme Court also has stated that "Historically, this body has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." *Wood v. Georgia*, 370 U.S. 375, 390 (1962).

by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218 (1960). The grand jury "belongs to no branch of the institutional Government, but rather serv[es] as a kind of buffer or referee between the Government and the people." *United States v. Thomas*, 274 F.3d 655, 670 (2d Cir. 2001) (internal quotation marks omitted).

Because the superseding indictment fails to set out every required component of an offense against the United States, it cannot be said here that a grand jury has properly declared "upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial." 30 F. Cas. at 993. Specifically, the superseding indictment fails to give any suggestion that the grand jury was aware that § 2339B applies only to "activities . . . directed to, coordinated with, or controlled by foreign terrorist groups," *Humanitarian Law Project*, 130 S. Ct. at 2709, let alone that the grand jury found Mr. Elshazly attempted to engage in such ISIS directed, coordinated, or controlled conduct. Without a showing that this case was properly presented to the grand jury and the grand jury made such a "coordination" finding — which the government likely cannot make here — this matter cannot proceed to trial without violating the Fifth Amendment.

**A.      The Indictment Fails to Allege Coordination with ISIS**

The second superseding indictment alleges that Mr. Elshazly provided material support to a terrorist organization in violation of 18 U.S.C. § 2339B(a)(1), which specifies the following "unlawful conduct":

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism

(as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

18 U.S.C. § 23339B(a)(1).

In turn, the term "material support or resources" is defined as:

any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]

18 U.S.C. § 2339A(b)(1).[2]

Section 2339B(h), however, imposes a significant limitation on application of the statute. Regarding allegations that a person has provided material support in the form of personnel to a terrorist organization, the statute provides:

No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. **Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.**

18 U.S.C. § 2339B(h) (emphasis added). As relevant here, this limitation means the statute is triggered only if Mr. Elshazly was working at ISIS's "direction or control." *Id.* It is not triggered by independent action—even if Mr. Elshazly specifically intended for his independent acts to

---

[2] *See* 18 U.S.C. § 2339B(g)(4) ("the term 'material support or resources' has the same meaning given that term in section 2339A (including the definitions of "training" and "expert advice or assistance" in that section").

advance ISIS goals or objectives. *Id.*

Further, § 2339B(i) provides a "Rule of construction" stating that "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States." 18 U.S.C. § 2339B(i).

Consistent with these express statutory limitations (which reflect amendments to the statute subsequent to its initial passage)[3], the United States Supreme Court has held that "'personnel' does not cover advocacy by those acting entirely independently of a foreign terrorist organization." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 130 S. Ct. 2705, 2709 (2010).

The Supreme Court further articulated that the term "service" as it applies to a material support allegation "refers to concerted activity, not independent advocacy." *Humanitarian Law Project*, 130 S. Ct. at 2709. Or, put slightly differently, "service" refers to "advocacy performed in coordination with, or at the direction of, a foreign terrorist organization." *Id*. After reading the term "service" as so limited, the Court went on to hold that "the statute is carefully drawn to cover only a narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations." *Id*. at 2710.

Finally, the Supreme Court in *Humanitarian Law Project* made clear these restrictions on the scope of criminalized conduct under the material support statute are not merely limits on the specific definitions of "personnel" and "service." Rather, they reflect a broader limitation on the material support statute's reach. The Court's holding, that the material support statute did not violate the First Amendment as applied in that case, turned in part on its emphasizing that

---

[3] *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 12 (2010) (describing modifications of the statute under the Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA)).

Congress has been conscious of its own responsibility to consider how its actions may implicate constitutional concerns. Most importantly, **Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups.**

*Id*. at 2711 (emphasis added).

Contravening these important, express limitations, the superseding indictment contains no allegation that Mr. Elshazly attempted to act in coordination with ISIS. *See* Ex. 1 (Indictment). Nor does the indictment in any way inform the grand jury that the statute is not meant to abridge free speech or independent advocacy in any way – that, as the Supreme Court stated, "Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups." *Id*. at 2711. To the contrary, the superseding indictment's plain language entirely excludes any reference to coordinated activity or that such coordination is a prerequisite to prosecution. Of particular note, the indictment makes no references to § 2339B(h), specifying that "No person may be prosecuted under this section in connection with the term 'personnel' unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization."

### B.    Coordination with ISIS Is an Essential Element of a § 2339B Offense

The absence of this language in the superseding indictment raises the fundamental question at issue in this motion: is this language necessary for a valid indictment? No circuit courts appear to have offered a direct answer. And, while several district courts have answered in the negative, as discussed below these decisions are mistaken. For the reasons that follow, this Court should now recognize that Congress intended coordinated conduct to be a requisite element of a § 2339B offense and, hence, that "coordinated conduct" must be a part of the grand jury's conclusions and

expressly stated in the grand jury's indictment.

"An indictment must contain[ ] the elements of the offense charged." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Accordingly, an indictment fails to state an offense against the United States if it lacks an element of the charged crime. *United States v. Resendiz-Ponce,* 549 U.S. 102, 117 (2007). Each element of an offense is a "constituent part" of the crime charged, which the prosecution must prove to sustain a conviction under a given statute. *United States v. Innie*, 7 F.3d 840, 850 (9th Cir. 1993). The indictment must set out on its face the essential facts alleged, and may not merely refer to the statute charged: "The text of an indictment gives the necessary assurance that the grand jurors knew and agreed to charge that which the text describes; but it gives no comparable assurance that the grand jurors considered or were advised as to the terms of a statutory section that is referred to only by a naked number." *United States v. Gonzalez*, 686 F.3d 122, 132 (2d Cir. 2012).

Where a defendant challenges the validity of an indictment, the timing of such an objection "is important to the level of scrutiny employed; a defendant who objects to the indictment before trial . . . is entitled to a more exacting review of the indictment than one who waits until after trial to object." *United States v. Pirro*, 212 F.3d 86, 91-93 (2d Cir. 2000). In either case, however, "[o]nly a defect so fundamental that it causes the ... the indictment no longer to be an indictment, gives rise to the constitutional right not to be tried." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989).

In most cases, "[containing] the elements of the offense charged," *Hamling*, 418 U.S. at 117, is not a particularly difficult hurdle for an indictment to clear. Generally, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime" to pass constitutional muster. *United States v. Tramunti*,

513 F.2d 1087, 1113 (2d Cir. 1975). This general statement, however, does not always hold true in specific cases, and it does not hold true here.

The general expectation that tracking the language of the statute will suffice is not a rule, but an empirical observation that most statutory offense provisions, most of the time, contain language good enough to get the job done. The actual rule, articulated by the Supreme Court well over a hundred years ago in *United States v. Carll*, is that reliance on statutory language is sufficient only *if* it achieves the underlying purpose of an indictment, which is to "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished":

> In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent.

105 U.S. 611, 611–13 (1881); *accord, e.g.*, *United States v. Santeramo*, 45 F.3d 622, 624 (2d Cir. 1995).

A few years after *Carll*, the Supreme Court reiterated that implicit or inferential allegations was not enough to prevent an indictment from being fatally defective:

> The general, and with few exceptions, of which the present case is not one, the universal, rule, on this subject, is that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment or implication, and the charge must be made directly, and not inferentially, or by way of recital.

*United States v. Hess*, 124 U.S. 483, 486 (1888). *Accord United States v. Kilpatrick*, 821 F.2d 1456, 1463 (10th Cir. 1987), *aff'd sub nom. Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S. Ct. 2369 (1988).

Recent decisions highlight some examples of circumstances in which reliance on statutory language alone results in a defective indictment. Perhaps most fundamentally, a defendant "cannot be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury." *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979). Accordingly, where "the statute alone does not set forth all the essential elements of the offense, the indictment is insufficient which simply tracks the language of the statute." *United States v. Opsta*, 659 F.2d 848, 850 (8th Cir. 1981). An indictment may fail to set out all requisite elements, for example, where "one element of the offense is implicit in the statute, rather than explicit" and the indictment "fails to allege the implicit element explicitly." *Pirro*, 212 F.3d at 93 (citation and internal quotation marks omitted).

Even where all elements are set out in the statute, the statutory terms may not be sufficiently specific, requiring elaboration in the indictment:

> where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition, but it must state the species, — it must descend to particulars. ... A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances.

*United States v. Cruikshank*, 92 U.S. 542, 544, 23 L. Ed. 588 (1875); *accord, e.g.*, *Russell v. United States*, 369 U.S. 749, 766 (1962) (indictment defective where "defendants were charged with refusing to answer a question pertinent to the subject under inquiry before a congressional subcommittee, but the indictments did not say what the subject under inquiry was"); *United States v. Serrano*, 191 F. Supp. 3d 287, 290 (S.D.N.Y. 2016) (holding that "because the essential jurisdictional element of § 931(a) is concealed in an unreferenced, subsidiary statutory provision, it is not sufficient for the grand jury's Indictment to 'track' the 'generic terms' of the overarching statute, and omit mention of the element. Accordingly, Count Two is dismissed for failure to plead the essential element of interstate commerce").

In addition to the requirement that an indictment provide all the facts and elements of an offence, an indictment must also "state the time and place (in approximate terms) of the alleged crime." *Tramunti*, 513 F.2d at 1113. The "time and place" requirement not only provides a means of giving notice to a defendant of when and where they have allegedly committed a crime, but it also ensures the indictment states an offense within the temporal and geographical limitations set out in the applicable statute.

Section 2399B's temporal limitation period appears in 18 U.S.C. § 3282(a), which prescribes a five year period of limitation. An indictment that fails to indicate that the offense fell within this limitations period is fatally defective and cannot sustain a valid conviction. The Tenth Circuit has explained:

> In *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240, the Supreme Court said that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form. A defective allegation of time is a matter of form if time is not an essential element of the offense and if the indictment charges facts showing that the offense was committed within the period of the statute of limitations. *Butler v. United States*, 10 Cir., 197 F.2d 561, 562, and *Weatherby v. United States*, 10 Cir., 150 F.2d 465, 467. **This is not a case where the defect is an incorrect date within the limitation period**. *Cf. United States v. Arge*, 10 Cir., 418 F.2d 721. **Here the omission of the year prevents the indictment from charging an offense within the statute of limitations. The defect was not one of form and the district court was without power to make the amendment**. *See Stewart v. United States*, 8 Cir., 395 F.2d 484, 488.

*United States v. Gammill*, 421 F.2d 185, 186 (10th Cir. 1970) (emphasis added).

Because failure to allege an offense within the limitations period is a fundamental defect in the indictment, a motion to dismiss on this basis may be brought prior to trial pursuant to Rule 12 of the Federal Rules of Criminal Procedure. A recent decision out of the Southern District of New York elaborates:

> A defendant may move under Rule 12(b) to dismiss an indictment for alleged violations of the statute of limitations, and a court may decide such a motion when the arguments can be analyzed "from the face of the indictment" without resorting

to any determination of "evidentiary questions." *See United States v. Sampson*, 898 F.3d 270, 279 (2d Cir. 2018) (citation omitted). "When deciding a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b), a court must accept all factual allegations in the indictment as true." *United States v. Thomas*, 492 F. Supp. 2d 405, 412 (S.D.N.Y. 2007).

*United States v. Colello*, No. 20 CR 613-LTS-1, 2022 WL 220216, at *1 (S.D.N.Y. Jan. 25, 2022).

*See also Toussie v. United States,* 397 U.S. 112, 113–14 (1970) (noting that a defendant charged in 1967 under an indictment alleging a willful failure to register for the draft in 1959 may raise the statute-of-limitations issue in a pre-trial motion) (cited in *Sampson*).

Grounds for a motion to dismiss an indictment may also arise if an indictment alleges conduct outside the court's territorial jurisdiction. *See*, *e.g. United States v. Jho*, 534 F.3d 398, 404 (5th Cir. 2008) (entertaining motion to dismiss on territorial jurisdictional grounds, but denying motion where statute criminalized conduct "while in a United States port, and that the government's indictment charges such conduct"); *United States v. Ionia Mgmt. S.A.*, 498 F. Supp. 2d 477, 484 (D. Conn. 2007) (same).

Given the above, a valid indictment must set out facts supporting each material element of the charged offense against the United States, which offense was committed within that offense's established limitations. These requirements reflect what the Supreme Court in *Carll* described as the "necessity of alleging in the indictment all the facts necessary to bring the case within that intent [of the legislature]." 105 U.S. at 613.

Here, the clearly expressed intent of Congress is that, with respect to charges brought under § 2339B, "No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) *to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization.*" Section 2339B(h) (emphasis added). The indictment, in

failing to allege conduct so qualifying, fatally fails to allege conduct within the scope of what Congress intended to be prosecuted (at least under a "personnel" theory).

To the extent that it is important to classify the Congressional dictate expressed in § 2339B(h), it is maybe best analogized to a statute of limitation. Indeed, the phrasing of § 2339B(h)'s admonition that "no person may be prosecuted…" directly echoes the phrase Congress used in the applicable statute of limitation, which states that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). This phrase "no person [shall / may] be prosecuted," moreover, appears recurrently in other statutes of limitation throughout the federal code. *See*, e.g., 18 U.S.C. § 3294 ("shall"); 18 U.S.C. § 3300 ("may"); 21 U.S.C. § 2403(b)(1) ("shall"); 31 U.S.C. § 333(d)(2) ("may"); 52 U.S.C. § 30145 ("shall").

Recognizing § 2339B(h) as a limitation that must be considered by the grand jury and appear expressly in the indictment charging a 2339B offense is consistent with the readily understood meaning of the language itself. "No person may be prosecuted" is most naturally read as expressing a congressional intent to limit who may be prosecuted under the statue even if that person's conduct factually satisfies the other core provisions of the statute.

Moreover, Congress crafted § 2339B(h) following a Ninth Circuit decision holding that portions of the material support statute, including its application to "personnel," were impermissibly vague under the First and Fifth Amendments. *See Humanitarian Law Project v. U.S. Dep't of Just.*, 352 F.3d 382, 404 (9th Cir. 2003) (holding that because "'personnel' could be construed to include unequivocally pure speech and advocacy protected by the First Amendment . . . the term 'personnel' is void for vagueness"), *opinion vacated on reh'g en banc,*

14

393 F.3d 902 (9th Cir. 2004) (*en banc* decision affirming judgment but vacating injunction due to Congressional amendment of the statute). *See also Humanitarian Law Project*, 561 U.S. at 12 (describing history). Coupled with § 2339B(i)'s caution that "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States," Congress crafted § 2339B(h) as a substantive and constitutionally mandated limitation on the otherwise apparent scope of § 2339B. By restricting the scope of prosecutable conduct, 2339B(h) acts as a statute of limitation.

A valid indictment must allege facts that place the conduct within the scope of the applicable provision of limitation. Here, the indictment offers nothing to suggest that the grand jury found facts that would place the conduct here within the bounds of the express limits set by § 233B(h). Therefore the indictment – especially Count One which attempts to assert that Mr. Elshazly provided himself as personnel to ISIS – must fail.

No circuit court has directly addressed the question of whether an indictment alleging material support under § 233B must allege coordination with a terrorist organization. Several district courts, however, have tackled the question, with the Eastern District of New York decision in *United States v. Pugh*, No. 1:15-CR-00116-NGG, 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) serving as the leading case on the issue. *See United States v. Augustine*, No. 18 CR 393 (SJ) (RML), 2021 WL 1381060, at *2 (E.D.N.Y. Apr. 13, 2021) (following *Pugh*); *United States v. Shafi*, 252 F. Supp. 3d 787, 793 (N.D. Cal. 2017) (same).

In *Pugh*, the court framed the issue of whether coordination must be alleged in the indictment as turning on the question of "whether Section 2339B(h) is an essential element of the material support offense, an affirmative defense, or merely a definition of the term 'personnel[.]'" *Pugh*, 2015 WL 9450598, at *7. The court went on to hold that "The fairest reading of Section

15

2339B(h) suggests that its limitations on the meaning of 'personnel' are definitional—not, as Pugh argues, an essential element, nor, as the Government argues, an affirmative defense. In making this determination, the court recognizes that plausible alternative readings of the statute are defensible." *Id.* at *8. The court reasoned as follows:

> First, subsection (h) begins: "No person may be prosecuted under this section in connection with the term 'personnel'[.]" The use of the phrase "the term 'personnel,'" with personnel in quotation marks, indicates that subsection (h) was intended to piggy-back on the statutory term "personnel" as used in the defined term "material support or resources." Subsection (h) then goes on to limit the scope of that definition. It appears, therefore, that Section 2339B(h) was intended by Congress to be definitional.

> Second, the structure of subsection (h) suggests that it was not intended to be an affirmative defense or an element of the statute, but rather was intended to be definitional. Subsection (h) provides that, in the context of a prosecution for a defendant's material support in the form of "personnel" (only one type of material support criminalized by the statute), no individual may be convicted under Section 2339B unless "that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization." That language materially tracks the substantive offense outlined in Section 2339B(a)(1), which begins "[w]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so" shall have committed the offense. Of course, "material support or resources" is a defined term that includes the provision of "personnel." The only material difference, then, between Section 2339B(h) and Section 2339B(a), in the context of "personnel," is that Section 2339B(h) pulls back on the breadth of the term "personnel." Put another way, subsection (h) is doing nothing more than limiting the breadth of Section 2339B(a)(1) with regard to "personnel" offenses.

> Third, Section 2339B(h) would not function like a typical affirmative defense. As discussed above, Section 2339B(h) does not add any additional factual considerations that would tend to negate a crime (i.e., the affirmative defense of insanity adds facts, namely facts showing insanity, that negate the criminal element of mens rea). Rather, it simply circumscribes the breadth of a term defined in the substantive offense. Accordingly, Section 2339B(h) overlaps with an element of the crime—specifically, the element of material support or resources. Affirmative defenses generally do not overlap with substantive elements of the offense. *See, e.g., Martin v. Ohio*, 480 U.S. 228,233 (1987) (finding that insanity could be made an affirmative defense to murder because it did not shift the burden of proof to the defendant to disprove any elements of the offense); *Patterson v. New York*, 432 U.S. 197, 206-07 (1977) (noting that legislatures can create an affirmative defense

unless doing so requires the defendant to negative an element of the crime). Because Congress is presumed to have legislated against the backdrop of judicial understanding of affirmative defenses, *see Midlantic Nat. Bank v. N.J. Dep't of Env't Prot*., 474 U.S. 494, 501 (1986), the court concludes that Section 2339B(h)'s departure from normal principles of affirmative defenses indicates that it is, in fact, not an affirmative defense.

*Id*. at *8–9 (footnote omitted).

While Mr. Elshazly does not take issue with the *Pugh* Court's analysis explaining the provision is not an affirmative defense[4], he does dispute the court's conclusion that coordination need not be specifically asserted in the indictment. As discussed below, that conclusion suffers from three fatal flaws: (i) it poses a false choice, incorrectly assuming that the language of § 2339B(h) must represent an element, an affirmative defense, or a definition; (ii) it incorrectly assumes definitional provisions need never be pled; and (iii) the *Pugh* court's analytically cramped scope of inquiry fails to consider whether a conviction based upon an indictment that does not factually allege coordination offends the rule that a defendant "cannot be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury." *Keith*, 605 F.2d at 464.

First, *Pugh* begins from an assumption that the language of § 2339B(h), "No person may be prosecuted under this section in connection with the term 'personnel'. . ." must be either an element of the offense, an affirmative defense, or a definitional provision. But as the discussion above suggests, this set of categories is underinclusive. Most significant, it excludes the category of provisions that includes statutes of limitation. These provisions, which are classically formulated as specifying that "no person shall be prosecuted," are not typically characterized as

---

[4] In this regard, *United States v. Ahmed*, No. 15 CR 49, 2015 U.S. Dist. LEXIS 171561, at *6-7 (D. Minn. Sept. 1, 2015), holding that § 2339B(h) is an affirmative defense, appears to contain virtually no analysis in support of its holding.

setting out elements of an offense, but they nevertheless describe factual conditions that must be satisfied for a prosecution or conviction to be valid. Consequently, a facial defect with respect to a statute of limitation may lead to dismissal of that indictment. *See, e.g., Colello,* 2022 WL 220216, at *1. In crafting § 2339B(h), Congress selected language ("No person may be prosecuted") that directly tracks the traditional formulation of a statute of limitation. Congress used this provision, moreover, to set out a factual condition—coordination—that must be satisfied as a condition to a valid prosecution. Section 2339B(h) looks like a statute of limitation, and quacks like a statute of limitation, but *Pugh* (and its progeny) incorrectly fail even to consider whether, as a statute of limitation, it must be included in the text of the indictment.

Second, even if *Pugh* rightly categorized § 2339B(h) as definitional, it does not follow that the indictment can therefore exclude any reference to that provision. To the contrary, the *Pugh* court expressly recognized the substantive impact of § 2339B(h) on what constitutes an offense under § 2339B – viz, that it "pulls back on the breadth of the term 'personnel.'" *Pugh*, 2015 WL 9450598, at *8-9. Irrespective of how it is categorized, a provision like § 2339B(h), that limits the conduct that may properly lead to a conviction, must be pled for an indictment to stand.

Tellingly, *Pugh* offers no authority of any kind for the proposition that a definitional provision need never be included in an indictment. Indeed, somewhat ironically, the discussion in *Pugh* actually explains why facts consistent § 2339B(h) *must* be pled in the indictment:

> The determination of whether Section 2339B(h) is an essential element of the material support offense, an affirmative defense, or merely a definition of the term "personnel," has potentially profound implications. First, if Section 2339B(h) creates an essential element—but not if it provides for an affirmative defense or defines a term in the statute—it must be pleaded in the indictment. Second, if § 2339B(h) is either an essential element or defines an element of the crime, it must be proven by the Government beyond a reasonable doubt. *Patterson v. New York*, 432 U.S. 197, 210 (1977) (due process requires that the prosecution prove all elements of a crime beyond a reasonable doubt).

*Pugh*, 2015 WL 9450598, at *7. Again, a review of this passage reveals no authority for the notion

that a definitional provision need not be included in an indictment. This passage acknowledges, however, (and this time with citation) that if a provision "defines an element of the crime, it must be proven by the Government beyond a reasonable doubt." *Id*. Just as the elements that define a crime collectively constitute the crime, the provisions that define an element are constituent parts of that element. If any are missing, the element is not satisfied. A valid indictment must therefore contain all constituent parts of every element. Simply put: a valid indictment must demonstrate that the jury understood, considered, and found present every constituent part of an offense.

Third, the *Pugh* decision loses sight of the forest for the trees. The question of whether a valid indictment needs to allege coordination with ISIS is not at its core a matter of parsing statutory structure to assign labels. An indictment must show that the grand jury found probable cause as to the existence of every fact needed to sustain a conviction. *See, e.g., Carl*, 105 U.S. at 613 (recognizing the "necessity of alleging in the indictment all the facts necessary to bring the case within that intent [of the legislature]"). In enacting § 2339B(h), Congress expressed its intent that no person be convicted absent a showing of coordination with a terrorist organization (thereby saving the statute from unconstitutional overbreadth as held by the Ninth Circuit in *Humanitarian Law Project*). On its face, an indictment that, as here, is silent as to coordination with ISIS fails to allege "all the facts necessary to bring the case within that intent."

**C.     The Defect in the Indictment Is Fatal to Both Count One and Count Two**

Count 1 of the superseding indictment, which alleges that Mr. Elshazly attempted to provide personnel to ISIS, falls explicitly within the limitation set forth in § 2339B(h). However, Count 2 of the indictment, which alleges that Mr. Elshazly attempted to provide services to ISIS, suffers from the same fatal flaw.

While "service" does not fall expressly within the scope of § 2339B(h)'s coordination

requirement, the United States Supreme Court has held that the term "service" as it applies to a material support allegation "refers to concerted activity, not independent advocacy." *Humanitarian Law Project*, 130 S. Ct. at 2709. The Supreme Court further explained that this conclusion flows in part from the structure of § 2339B: "if independent activity in support of a terrorist group could be characterized as a 'service,' the statute's specific exclusion of independent activity in the definition of 'personnel' would not make sense. Congress would not have prohibited under 'service' what it specifically exempted from prohibition under 'personnel.'" *Id*. at 2722. A prosecution under a "service" theory thus must make the same showing of coordination as required for a prosecution under a "personnel" theory. And coordination is key:

> Under the material-support statute, [individuals] may say anything they wish on any topic. They may speak and write freely about the PKK and LTTE, the Governments of Turkey and Sri Lanka, human rights, and international law. They may advocate before the United Nations. As the Government states: "The statute does not prohibit independent advocacy or expression of any kind"

*Id*. at 2722–23; *accord id.* at 2711 ("Congress has avoided any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups."). Absent coordination, any and all advocacy or expression by Mr. Elshazly – no matter how copious or vociferous – is not a "service" to ISIS or any other terror organization.

Count 2 of the superseding indictment does not allege, as Congress intended to require, that Mr. Elshazly attempted to engage in "advocacy performed in coordination with, or at the direction of, a foreign terrorist organization." *Id.* Rather, it alleges only that Mr. Elshazly provided services "by administering chat rooms and servers to distribute propaganda and recruitment materials" (Ex. 1), actions that do not by their nature suggest or require coordination or direction by ISIS. Accordingly, Count 2 of the indictment is fatally deficient.

For all the foregoing reasons, Counts 1 and 2 of the superseding indictment should be dismissed because they each fail to state an offense against the United States.

## II.    IN THE ALTERNATIVE, COUNT TWO OF THE SUPERSEDING INDICTMENT SHOULD BE DISMISSED BECAUSE IT VIOLATES THE FIRST AMENDMENT

"Content-based laws — those that target speech based on its communicative content — are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests . . . . Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (citations omitted).[5]

For the reasons above, the indictment in this case fails because it does not allege coordination with ISIS. This essential element is, as the Supreme Court explained in *Humanitarian Law Project*, an important aspect of what saves the constitutionality of the statute. Far from criminalizing speech, "Under the material-support statute, [individuals] may say anything they wish on any topic. They may speak and write freely about the PKK and LTTE, the Governments of Turkey and Sri Lanka, human rights, and international law. They may advocate before the United Nations. As the Government states: 'The statute does not prohibit independent advocacy or expression of any kind.'" *Humanitarian Law Project*, 130 S. Ct. at 2722–23.

In apparent contradiction to its representations to the Supreme Court that "independent

---

[5] The Supreme Court has further elaborated: "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. As a result, the Constitution demands that content-based restrictions on speech be presumed invalid ... and that the Government bear the burden of showing their constitutionality. In light of the substantial and expansive threats to free expression posed by content-based restrictions, this Court has rejected as startling and dangerous a free-floating test for First Amendment coverage ... [based on] an ad hoc balancing of relative social costs and benefits. Instead, content-based restrictions on speech have been permitted, as a general matter, only when confined to the few historic and traditional categories [of expression] long familiar to the bar." *United States v. Alvarez*, 567 U.S. 709, 715–17 (2012) (citations and internal quotation marks omitted).

advocacy or expression of any kind" is not prohibited, the government now seeks to prosecute Mr. Elshazly for "administering chat rooms and servers to distribute propaganda and recruitment materials" (Ex. 1)**,** without any showing (or claim) that the charged dissemination of information was anything other than independent advocacy by Mr. Elshazly.

Notwithstanding its refusal to strike down the material support statute under the facts then before it, the Supreme Court in *Humanitarian Law Project* emphasized that "**we in no way suggest that a regulation of independent speech would pass constitutional muster**, even if the Government were to show that such speech benefits foreign terrorist organizations. . . . We simply hold that, in prohibiting the particular forms of support that plaintiffs seek to provide to foreign terrorist groups, § 2339B does not violate the freedom of speech." *Humanitarian Law Project*, 130 S. Ct. at 2730 (emphasis added). *See also* 18 U.S.C. § 2339B(i) ("Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment to the Constitution of the United States.").

Because independent advocacy in the form of disseminating propaganda does not fall within the narrow classes of speech outside of First Amendment protections, the government cannot sustain its burden of showing that § 2339B validly criminalizes the conduct alleged in Count 2 of the superseding indictment.

## III.    IN THE ALTERNATIVE, AS APPLIED TO THE CONDUCT ALLEGED IN COUNT TWO OF THE SUPERSEDING INDICTMENT, § 2339B IS UNCONSTITUTIONALLY VAGUE

A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement. We consider whether a statute is vague as applied to the particular facts at issue, for [a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. We have said that when a statute interferes with the right of free speech or of association, a more stringent vagueness test should apply. But perfect clarity and precise guidance have never been required even of regulations that

restrict expressive activity.

*Humanitarian Law Project*, 130 S. Ct. at 2718–19 (citations and internal quotation marks omitted).

Applying those standards here, the conduct alleged in Count 2 of the superseding indictment plainly falls outside the scope of the conduct proscribed by § 2339B. But if the alleged conduct – "administering chat rooms and servers to distribute propaganda and recruitment materials" (Ex. 1) – were to somehow be shoehorned into the statute's reach, a person of ordinary intelligence would have nothing resembling fair notice of what is or is not prohibited, especially where the Supreme Court has declared that "[t]he statute does not prohibit independent advocacy or expression of any kind.'" *Humanitarian Law Project*, 130 S. Ct. at 2722–23. Accordingly, Count 2 of the superseding indictment should be dismissed as unconstitutionally vague.

## <u>CONCLUSION</u>

For the reasons stated above, the second superseding indictment should be dismissed.

Respectfully submitted,

THE DEFENDANT,
Ahmad Elshazly

OFFICE OF THE FEDERAL DEFENDER

Date: February 22, 2022                    /s/ James P. Maguire
                                           James P. Maguire
                                           Assistant Federal Defender
                                           265 Church Street, Suite 702
                                           New Haven, CT 06510
                                           Phone: (203) 498-4200
                                           Bar No.: ct29355
                                           Email: james_maguire@fd.org

                                           Sabrina Shroff,
                                           80 Broad St. 19th Floor
                                           New York, New York 10004

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 22, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ James P. Maguire

James P. Maguire