UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
---------------------------------------------------x
UNITED STATES OF AMERICA

-against- 20 CR 71 (VAB)

AHMAD KHALIL ELSHAZLY
--------------------------------------------------x

**AHMAD KHALIL ELSHAZLY'S REPLY SENTENCING MEMORANDUM**

/s/Sabrina P. Shroff
Attorney
730 Third Avenue, 16th Floor
New York, New York 10017
Tel: 646.763.1290

Josh B. Ewing, Assistant Federal Defender
10 Columbus Blvd, 6th FL
Hartford, CT 06106
Phone: (860) 951-6664

*Attorneys for Ahmad Khalil Elshazly*

TO: United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT 06510
Attn: Neeraj Patel

United States Department of Justice
National Security Division, Counterterrorism Section
Attn: John Cella

Ahmad Elshazly has spent more than 80 months (6.75 years) in prison for his actions and already has agreed to a lifetime of supervised release that includes a dozen proposed "special conditions" beyond the usual mandatory and discretionary conditions of release.[1] Therefore, the narrow question before the Court is whether any additional prison time is necessary here. Because the answer is "no," the Court should sentence Mr. Elshazly to time served, followed by a lifetime of supervised release.

In his sentencing memorandum and attached exhibits A-E, Ahmad Elshazly showed how the combination of multiple serious emotional and environmental issues – a chaotic upbringing, an unequipped mother, educational failure, low self-esteem, extreme isolation, the stupidity of youth, never treated autism spectrum disorder (ASD), and bouts of depression – made him uniquely vulnerable to the toxic Syrian and ISIS propaganda he found while friendless, unsupervised, and alone in his bedroom. A disappointment to himself and others in real life, he became increasingly mired in fantasy, making cinematic promises of bold military actions, and

---

[1] Mr. Elshazly suggests that the Court impose a dozen special conditions as part of his supervised release, some proposed by the Department of Probation and agreed to by Mr. Elshazly (PSR ¶ 113), and some proposed by Mr. Elshazly based on the "Recommendations" of Dr. Schouten. *See* Schouten Evaluation (Ex. E) at 13-14. All are designed to prevent any risk of recidivism and maximize the likelihood of his successful reentry into society. They are: (i) random searches of Mr. Elshazly's home, car, and office by Probation; (ii) no associating with any criminal groups or organization, including any which advocate terrorism; (iii) no possessing, viewing, accessing, or otherwise using material that reflects extremist or terroristic views, or are deemed inappropriate by Probation; (iv) polygraph exams; (v) periodic searches of his electronic devices by Probation; (vi) Probation installing monitoring software on all his electronic devices; (vii) initial and periodic unannounced reviews of his electronic devices to ensure the monitoring devices works and that no prohibited data has been accessed; (viii) required participation in mental health programs recommended by Probation and approved by the Court; (ix) educational services leading to a GED; (x) "social skills training" to address the challenges posed by Mr. Elshazly's autism; (xi) that he live with his father and stepfamily, an environment that provides the structure, discipline, support, and encouragement he needs; and (xii) no passport absent express permission from Probation. These 12 special conditions all demonstrate Mr. Elshazly's rejection of his beliefs and commitment to never reoffending.

boasting of skills and abilities (such as rocket manufacturing) that were entirely nonexistent. At the age of 22 (but much younger in maturity), and with the help of two CHS, Mr. Elshazly tried to travel to Syria but was arrested before he could leave Connecticut. He is now almost 29.

The government's lengthy opposition, and its concomitant request for a 15-year sentence, is all based on a single false premise – that this sentence is necessary “to protect the public, as well as to deter the defendant and others who share his [radical Islamist] views.” Govt. Br. [ECF No. 225] at 3. The government is wrong, and its operating premise and sentencing recommendation is simplistic and readily rebutted.

The government focuses its brief on Mr. Elshazly’s offensive conduct in 2018 and 2019. But the Court is charged with looking at more than the offense. It is required to make an “individualized assessment based on the facts presented,” *Gall v. United States*, 552 U.S. 38, 50 (2007), considering “every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment.” *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Mr. Elshazly’s individual circumstances – circumstances the government mostly ignores and always downplays – contradicts the government’s convenient caricature of Mr. Elshazly’s as a committed terrorist.

The defense has presented the Court with the evaluations and reports of two experts with decades of relevant experience – Dr. Madelon V. Baranoski and Dr. Ronald Schouten. The doctors conducted the individualized assessment the government failed to undertake. The doctors examined his school records, his case file, his disciplinary history at Wyatt Correctional Facility, the PSR, and the letters submitted by his parents, before speaking to Mr. Elshazly at length and subjecting him to several diagnostic mental and psychological tests. *See* Elshazly Sentencing

Memo at Exhibits D (Baranoski Report) and E (Schouten Evaluation). Based on the foregoing, the doctors detail the causes of Mr. Elshazly's offensive conduct, and how those causes can be successfully addressed and resolved post-incarceration, including through the imposition of the recommended special conditions. *See* Exs. D and E. Of course, omitted from the government's submission is the fact that Dr. Schouten has testified – many times – for the United States Attorney's Office.

While the path forward for Mr. Elshazly and his family will be involved and lengthy, there is no real question of his family's support, *see* Elshazly Sentencing Memo at Exhibits B (Mother Letter) and C (Father Letter), or Mr. Elshazly's commitment to that path, as demonstrated by, *inter alia*, his timely plea and agreement to lifetime supervision with special conditions, proposed by Mr. Elshazly, that will provide him with the help and mental, emotional, and behavioral treatment he needs. Nor is there any § 3553(a) justification for making Mr. Elshazly wait additional years before he is released and gets the help he needs. *See* Elshazly Sentencing Memo at p. 18-22 (applying sentencing factors and parsimony principle to facts here).

Drs. Baranoski and Schouten have both opined that Mr. Elshazly is not a risk to the community if released. Based on her examination of the record, the cognitive tests she administered and her discussions with Mr. Elshazly, Dr. Baranoski concludes that he is not violent, antisocial or psychotic, and that his autism and related emotional and behavioral issues can be successfully addressed in therapy and that he can be successfully returned to the community. Baranoski Report at 9-16. Similarly, applying his expertise, Dr. Schouten opines "with a reasonable degree of medical certainty, that Mr. Elshazly's risks of violence in the community and of recidivism are low, assuming he has access to the recommended interventions" (which are purposefully reflected in the proposed special conditions).

The government's self-serving criticisms of Drs. Baranoski and Schouten's conclusion that Mr. Elshazly presents a low danger to his community and/or recidivism risk are meritless. The government avers that Dr. Baranoski "lacks the necessary context" because she "was not provided the PSR" (Govt. Br. at 25) but ignores that she read all the primary documents on which the PSR is based. *See* Baranoski Report at 2. The government also insinuates that Dr. Baranoski's diagnosis – that Mr. Elshazly "has significant characteristics associated with [ASD] in the mild to moderate range" and related discussion of its important impact on Mr. Elshazly's behavior – is a fake. Govt. Br. at 26. That diagnosis, however, was based on the results of a battery of established, reliable cognitive tests administered to Mr. Elshazly by Dr. Baranoski – tests that should have been administered years ago but were not – and his school records/behavior supporting that diagnosis. Baranoski Report at 12, 13-14. The government's desperate attempt at character assassination is unseemly; it should be ignored by the Court.[2] This is especially when the government did not seek to have its own expert evaluate Mr. Elshazly.

Regarding Dr. Schouten, the government does not contend Dr. Schouten is faking his opinion that Mr. Elshazly is a low recidivism risk, doubtless because Dr. Schouten is often retained as an expert by the United States Attorney's Office and by the National Security Division (NSD) and asked to render his expert opinion in prosecutions, including in terrorism cases. Instead, the government pretends Dr. Schouten "fundamentally misunderstand[s] the factual record," in stating that Mr. Elshazly is not "motivated by strong ideology." Govt. Br. at 25 (citing Schouten

---

[2] In the alternative, the government contends the Baranoski Report should be read to support a longer incarceration (despite Dr. Baranoski's opposite conclusion) because Mr. Elshazly's autism makes him more susceptible to ISIS propaganda, and he is unreceptive to treatment and medication. Govt. Br. at 26 (citing Baranoski Report at 15, 17). In so contending, the government ignores that Mr. Elshazly has requested that the Court subject him to special conditions, including monitoring of his social media and contacts and mental and behavioral therapy and treatment.

Evaluation at 12). Dr. Schouten, however, does not misunderstand the factual record; he simply considers more than 2019.

Dr. Schouten's conclusion that Mr. Elshazly is not a committed Islamist is not just based on his review of the factual record (*i.e.*, what happened in 2019), but also his many years of experience countering violent extremism, his review of Dr. Baranoski's Report, and his meeting with Mr. Elshazly. *See* Schouten Evaluation at 2-3. Applying all of that, Dr. Schouten explains the various factors that led to Mr. Elshazly's offense and rightly concludes that, in 2026, Mr. Elshazly is not "radicalized" and is "at low risk of violence or recidivism," conclusions well-supported in the Schouten Evaluation. *See id.* at 11-14. His conclusion best accords with the Court's duty to sentence Mr. Elshazly "as he stands before the court on the day of sentencing," rather than 2019. *United States v. Quinntieri*, 306 F.3d 1217, 1230 (2d Cir. 2002). At the sentencing, the Court will hear firsthand from Mr. Elshazly, and will see that Mr. Elshazly is not an ideologue, as the government wrongly claims.

Upon his release from prison, Ahmed plans to join his father and stepfamily in Frederick, Maryland, where he can get a job in the kitchen at a restaurant, get his GED, and get the mental, emotional, and behavioral help he needs. The Court should allow him to start building that positive life now, by imposing a sentence of time served.

With the government's unsupported linchpin conceit that Mr. Elshazly remains committed to ISIS removed from the equation, it is readily apparent that the § 3553(a) sentencing goals and parsimony principle underlying federal sentencing goals are all met by the requested sentence of time served, followed by a lifetime of supervised release.

While the government contends more time in prison is needed to punish, specifically deter, and rehabilitate Mr. Elshazly, the government is mistaken. The operative facts conclusively

demonstrate that no additional prison time is needed to deter or rehabilitate him. Moreover, Congress has recognized that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Plainly, correction, deterrence, and rehabilitation are best addressed here by the lifetime of supervised release, which will allow Mr. Elshazly to successfully reintegrate into society while getting the mental health treatment and medication he needs. Nor can the government salvage its ask as either sufficient and no greater than necessary by citing to either Mumuni or *Khatatallah*. Govt. Br. At 21. The citation and description of *Khatallah* is particularly misleading. While it is correct that Abu Khatallah was convicted only of material support, the Circuit found "Khatallah's sentence is substantively unreasonably low in light of the gravity of his crimes of terrorism which included murder of American soldiers… *and who played a leadership role* in a violent attack on the Mission and those who attack Americans abroad." https://x.com/USAttyPirro/status/2078209524356321708 Surely counsel in the National Security Division knows the difference between the hapless Mr. Elshazly and abu Khatallah – a Libyan militant who was the mastermind of the attacks in Benghazi.

Likewise, the sentencing goal of general deterrence is also met here. Studies have shown that it is the arrest that best deters, not the length of the sentence. *See, e.g.*, Valerie Wright, *The Sentencing Project, Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, 5-6 (2010), available at http://www.antoniocasella.eu/nume/Wright_2010.pdf.[3] Mr.

---

[3] *See also* Brian Jacobs, "*The Cost of Affording Deterrence*," Forbes (Nov. 16, 2021) (to achieve the aim of general deterrence, "social science conclusively finds that certainty matters more than severity"), available at https://www.forbes.com/sites/insider/2021/11/16/the-cost-of-affordingdeterrence/?sh=6f8975277bd4; U.S. Department of Justice, *Five Things About Deterrence*, National Institute of Justice (May 2016) ("Research shows clearly that the chance of being caught is a vastly more effective deterrent than even draconian punishment."), available at https://www.ojp.gov/pdffiles1/nij/247350.pdf.

Elshazly' family, neighbors, and associates already have seen him arrested, prosecuted, and imprisoned for over six years. Under these circumstances, a 15-year sentence will not provide any greater general deterrence than the 80 months already served. Indeed, it may well be that treating Mr. Elshazly with compassion will show those who practice the Muslim faith that the United States is not the enemy of Islam that the radical Islamist claim the U.S. to be.

## CONCLUSION

For all these reasons, and those set forth in his prior sentencing memo, the requested sentence of time served and supervised release for life is sufficient to meet all the federal sentencing goals and the parsimony principle underlying federal sentencing. Time served is the proper sentence here. Accordingly, the Court should impose that sentence here.

Dated: September 1, 2026

Respectfully submitted,

/s/ Sabrina Shroff
Josh B. Ewing
*Attorneys for Ahmad Khalil Elshazly*